**In The United States District Court for the District of Maryland**

| | |
|---|---|
| **Chelsi Cheyenne Randall;**<br>**Jane Doe**<br>3645 Joy Lane<br>Waldorf, Maryland 20603<br><br>          Plaintiffs<br><br>**v.**<br><br>**The Calverton School**<br>300 Calverton School Rd.<br>Huntingtown, MD 20639<br><br>          Defendant | **Case Number: 8:21-cv-2231** |

## COMPLAINT

For this Complaint, the Plaintiff, Chelsi Cheyenne Randall files this lawsuit on her own behalf and on behalf of her daughter Jane Doe, by undersigned counsel, states as follows:

## JURISDICTION

1. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (Federal question).

2. This action arises under the following Federal Statute: The Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. § 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title II of the ADA, prohibits discrimination in the provision of public services, which is applied to private educational institutions that receive Federal money or assistance in any form. Both the ADA and § 504 prohibit

discrimination against persons with disabilities who have filed a complaint with the Office of Civil Rights (OCR).

## VENUE

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that all parties reside in this Judicial District and the matters at issue arose in this Judicial District.

4. The occurrences which give rise to this action occurred in Calvert County, Maryland and Plaintiffs resides in Charles County, Maryland.

5. Venue is proper in the District Court of Maryland pursuance to 28 U.S.C. § 504.

## PARTIES

6. The Plaintiffs, Chelsi Cheyenne Randall ("Ms. Randall") and her daughter ("Jane Doe"), are one adult and one child resident of Charles County, Maryland.

7. The Defendant, The Calverton School ("The School"), is a non-religious charter private educational institution in Calvert County Maryland that receives Federal Funding.

## LEGAL AND FACTUAL BASIS FOR THIS LAWSUIT

8. The Calverton School violated Jane Doe's right against discrimination in education due to a disability conferred upon her by 28 U.S.C. § 504, The Americans With Disabilities Act.

9. Cast in negative terms, Section 504 of the Rehabilitation Act, 29 U.S.C. §

794, bars all federal funded entities (government or otherwise) from

discriminating on the basis of disability.  Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States
> … shall, solely by reason of his or her disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal
> financial assistance or under any program or activity conducted by any
> Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

10. Defendant The Calverton School receives federal financial assistance

and is covered by Section 504.

11. Sometime around the middle of March 2021, Ms. Randall made an initial

inquiry into enrolling her two children at The School. During that time, she

spoke with one Heidi Merryman about setting up a "virtual tour" of The

School.

12. On March 24th, 2021, Ms. Randall had a virtual meeting with Heidi

Merryman that included a "virtual tour" of the lower (elementary) school.

13. On March 24th, 2021, Heidi Merryman sent Ms. Randall an email with a link

for an "online admissions assessment" for Jane Doe.

14. On March 24th, 2021, Heidi Merryman informed Ms. Randall that The School

conducts child assessments for suitability online via Zoom. A recording of the

Zoom assessment is sent to the The School's admissions department and a

decision is then rendered after review.

15. Before April 5th, 2021, Ms. Randall having toured the Upper school, and as well as The School answering her follow-up questions, Ms. Randall decide that The School was a good fit for her children where they could receive a quality education.

16. During April 2021, Ms. Randall filed required paperwork for The School – including handing over financial statements and records, financial aid approval, the children's health records, and submitted a request to the children's previous schools to supple The School with their educational records.

17. On April 23, 2021, Ms. Randall's application for partial financial aid was approved by The School.

18. On April 27th, 2021, at 1300 hours, Ms. Randall submitted applications for her two children, her son, and her 7 year old daughter, Jane Doe and remitted the $150 application fees (totaling $300 for both children) to The School.

19. On April 27th, 2021 Ms. Randall received confirmation from The School that they received the application fees as well as the children's previous school records, namely Jane Doe's records from St. Thomas Jennifer Elementary.

20. Within the next 24 hours after receiving the children's school records, Heidi Merryman emailed Ms. Randall in which Heidi Merryman stated that she was previously unaware that Jane Doe has IEP and/or diagnosis. Heidi Merryman indicated in that email that Jane Doe would not be "a good fit" for

4

The Calverton School. Ms. Randall cannot recall the exact date and time, because The Calverton School uses an email system that allows for the recall ("unsend") of emails that were already sent out.

21. The fact that The School "unsent" an email of that nature indicates a guilty conscience.  The School likely knew that email was evidence of discrimination.

22. On April 29th, 2021 at 11:36 a.m., Ms. Randall gathered her thoughts, and wrote an email in response to the previous, unsent email from Heidi Merryman.  In that email Ms. Randall explained in detail that Jane Doe has *high functioning* autism spectrum disorder. (Emphasis added). Ms. Randall explained that Jane Doe has exceptional academic abilities and required no accommodations whatsoever.

23. Ms. Randall further explained that Jane Doe was, at that time, currently enrolled in a typical preschool classroom and received no outside therapy. Ms. Randall further explained that Jane Doe has no physical, mental, or psychological issues that prevent Jane Doe from succeeding in academics in the classroom setting.

24. Ms. Randall further explained that Jane Doe had not had a single allergy or other health accommodation previously.

25. In her email, Ms. Randall first apologized for not addressing all of Heidi Merryman's points as the email was now unsent, and unavailable for Ms. Randall to review. Ms. Randall explained the details of Jane Doe's diagnosis

with Jane Doe's disability, and that Jane Doe does not require any accommodation at all.  Ms. Randall also explained that Jane Doe's disability was so minimal, that even Jane Doe's close family members were unaware of any diagnosis or abnormal behavior or ability. Ms. Randall also explained Jane Doe's academic talents and achievements; described that Jane Doe is a child that would be an asset in any classroom; and expressed possible ways to move forward with Jane Doe's enrollment at The School.

26. Ms. Randall also explained a willingness to sign a contract, the essence of would be that if there were any disruptions, or if Jane Doe required more assistance than other students, then she would be removed from in-class learning for the remainder of that year and then voluntarily withdrawal Jane Doe from The School the following year, thereby attempting to ease any apprehension on the part of The School's administration and admissions departments.

27. Ms. Randall also made it clear that she would only want Jane Doe enrolled in The School if she were treated like every other student entering kindergarten at The School.

28. On May 3rd, 2021, at 1427 hours, after receiving no response to her prior emails, Ms. Randall emailed Heidi Merryman again explaining how Ms. Randall simply wanted her children to enjoy a quality education, and wanted to move past the situation.

29. On May 3rd, 2021, at 1840 hours, Heidi Merryman emailed Ms. Randall expressing that Heidi Merryman would schedule an in-person assessment (thereby retracting the Zoom assessment offer, and replacing it with a different assessment, already treating Jane Doe differently than any other students entering The School's kindergarten class).

30. Ms. Randall took Jane Doe to the assessment which was scheduled for Wednesday, May 19th, 2021 at 1100 hours. When Ms. Randall and Jane Doe arrived, Heidi Merryman was already waiting in the lobby. It was at this point Ms. Randall learned that Heidi Merryman herself, whom had already expressed her discomfort with admitting Jane Doe to The School, would be conducting the assessment personally.

31. Heidi Merryman told Ms. Randall that she would not be gone long, maybe 15 minutes at most. Then Heidi Merryman took Jane Doe to a private room where Ms. Randall could not watch the "assessment". Ms. Randall waited in the lobby with her son.

32. A few minutes later Heidi Merryman returned with Jane Doe. Ms. Randall asked Heidi Merryman how the assessment went. Heidi Merryman replied "[Jane Doe] could count to 14." Ms. Randall replied that Jane Doe was not at all limited to counting to merely 14, and in fact could count much higher than that with no problem.

33. Right there in the lobby Ms. Randall asked Jane Doe to count to 100. Jane Doe began counting in the hallway. Jane Doe made it to a count of 50

without a problem when Ms. Randall stopped Jane Doe and looked at Heidi Merryman to see if that was enough and Ms. Randall asked Heidi Merryman if that were enough or if she would like Jane Doe to continue.

34. Ms. Randall asked Heidi Merryman what she thought of Jane Doe's reading assessment. Heidi Merryman expressed to Ms. Randall that Jane Doe "did not want to read", and therefore Heidi Merryman did not have an opinion during the assessment of Jane Doe's reading ability.

35. Ms. Randall asked Heidi Merryman if there was anything else Jane Doe could do at this time to prove her worthiness to attend The School to which Heidi Merryman replied that she was satisfied.

36. Before leaving the campus, Ms. Randall asked how the admissions process worked, and when they (the family) could expect a determination. Heidi Merryman said that other admissions assessments were done on Zoom and the admissions department watched those Zoom assessments before making a decision, however in their case (Jane Doe and Ms. Randall) Heidi Merryman would report her "findings" to the admissions department to make their decision. Heidi Merryman also expressed that because of traveling, it might be "a while" before a determination could be reached.

37. Ms. Randall thanked Heidi Merryman for her time and Ms. Randall took her children and left the campus.

38. Ms. Randall was later told that Heidi Merryman was in fact the principal for the lower school and was in charge of the admissions department.

39. On May 25th, at 1424 hours, Heidi Merryman sent Ms. Randall an email saying that "[Jane Doe] is not a good fit for The School at this time".

40. On Tuesday, June 1st, at 1355 hours Ms. Randall emailed Heidi Merryman and requested a specific reason for the denial of Jane Doe's admission to The School. Ms. Randall wanted something more than simply "not a good fit." Heidi Merryman never replied.

41. On June 2nd, Christopher Hayes sent an email to Ms. Randall which said that he had heard that Ms. Randall was requesting a specific reason for denial of Jane Doe's admission. Christopher Hayes stated that "fundamentally any acceptance comes down to The School's perception of the likelihood of a potential student finding success within Calverton's program." He continued "while we recognize this is not an exact science, our current feeling is that Jane Doe is not yet ready to find success at Calverton."

42. On June 2nd, Ms. Randall replied to Christopher Hayes requesting an in-person meeting to discuss further the admissions process because Ms. Randall feared Christopher Hayes might not have understood Jane Doe was denied *before/prior* to her assessment, and that Jane Doe's assessment was not done in conformity with the ordinary admissions process that other potential enrollee students received. Christopher Hayes replied that he would meet with Ms. Randall to hear her concerns, but that he had "limited direct involvement with the lower school" and that his "tenure at The Calverton School ends in mid-June, so [his] ability to follow up on any questions raised

will be limited." Christopher Hayes expressed that Heidi Merryman was the principal of the lower school.

43. On June 3rd, at 1123 hours, Ms. Randall sent another email asking to speak with Heidi Merryman's supervisor about The School's denial of admission for Jane Doe.

44. On June 4th at 1238 hours, Christopher Hayes sent one final email stating that "given your references to legal action against The School, I have asked colleagues to discontinue communication with you until after this matter is resolved." At this time, Christopher Hayes gave the first true reason for the denial of Jane Doe that Ms. Randall received. He stated that "during the assessment with Heidi [Merryman] concerns about Jane Doe's sustained attention on task at an age-appropriate level and frequent verbalized refusal to comply were among the reasons that The Calverton School chose not to offer [Jane Doe] admissions this year."

45. Ms. Randall sent one final email on June 4th at 1325 hours reminding Christopher Hayes that: 1) Heidi stopped responding long before legal action was mentioned; 2) Jane Doe's attention span can only be so short being as the assessment was short and done in non-conformity to The Schools standard procedure; 3) Heidi Merryman denied Jane Doe admissions immediately after receiving the I.E.P, *before* conducting the assessment at all; and 4) Ms. Randall appreciates his willingness to meet.

46. Ms. Randall stated that she was done trying to resolve this matter amicably because no one anywhere seemed to have any issue with the abnormal process that The School used to conduct Jane Doe's assessment compared to the admissions process of other potential enrollees.

47. Ms. Randall filed an ADA complaint with the United States Department of Justice on Friday June 11th, 2021 and has not yet received a response to that complaint as of the time of the filing of this complaint.

RELIEF REQUESTED

48. Plaintiffs respectfully request the following relief in the form of a judgment against the Defendants The Calverton School, Heidi Merryman, Christopher Hayes, and those involved in the admissions process at the lower school, jointly and severally:

   A. An order declaring Defendant's non-conforming admissions process applied to Jane Doe and such practices are in violation of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

   B. An order preliminarily, and thereafter permanently, enjoining Defendants and their agents, and all other persons and entities in active concert or privity or participation with them, from continuing their unlawful conduct at The Calverton School.

   C. An entry of judgment for Plaintiffs against Defendants for compensatory and punitive damages for money so that Jane Doe can attend a school

comparable to The Calverton School, including money for transportation and to compensate Ms. Randall for the extra time she will spend, and costs she will incur in providing her child with such a comparable education in the amount of $750,000.00. A judgment for punitive damages in the amount of $750,000.00 to penalize The Calverton School for discrimination against Jane Doe based solely on her disability and for no good cause shown.

D. Such further and different relief as is just and proper or that is necessary to make Plaintiffs whole.

/s/Christopher G Moschkin, Esq.

Christopher G Moschkin, Esq.
Bar No. 21272
Christopher G Moschkin, Esq LLC
4848 Battery Lane. Ste 200
Bethesda, MD 20814
301-310-6170
chris@rockville-law.com
**Counsel for Chelsi Randall and Jane Doe**